WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—December, 1884.

SMITH v. BAYLIS.

*In the matter of the estate of* ANNE SMITH, *deceased.*

Upon a judicial settlement of the account of the administrator of intestate's estate, a decree was rendered in July, 1884, whereby the distributive share therein of J., a son of the intestate, against whom proceedings supplementary to execution were then pending, was fixed at $212, which the administrator was ordered to retain until the disposition thereof should be directed by a court of competent jurisdiction. Thereafter the wife of J. applied to the Surrogate's court to open the decree so rendered, and amend the same by directing said share to be paid to herself, alleging, substantially, that J., during the lifetime of his mother, had conveyed to the latter all personal property to come to him from the grantee's estate, or from any other source whatever; and that said grantee had forthwith conveyed the same to petitioner.—

*Held*, that it was not in the power of any person, by any such process as that described, to introduce himself into the category of the next of kin of another; that petitioner, being neither a creditor nor one of the next of kin of intestate, nor the assignee of a distributive share in her estate, had no standing in court; and that her application for the opening of the decree should be denied.

THIS was an application made by Julia C. Smith, the wife of John B. Smith, to open a decree made in July, 1884, settling the accounts of Theodore Baylis

as administrator of the intestate, who died in March, 1874, and directing distribution of the fund.   On that accounting, it appeared that a judgment had been obtained against said John B. Smith, who was a son of the intestate, and that proceedings supplemental to execution had been taken and were pending.   The distributive share of said John B. was, by the decree, fixed at $212.27, and the administrator was directed to retain the same until the further order of some court having jurisdiction in the premises should lawfully direct the disposition thereof.   The petitioner stated that, on December 23rd, 1863, her husband conveyed to the said intestate all his right, title and interest of, in and to all his real and personal property then owned or possessed by him, or to come to him from the estate of Martin Smith (his father) or Anne Smith (his said mother), or from any other source whatsoever; and that, on the next day, said Anne Smith conveyed the same to the petitioner; and she, therefore, alleged that she was the owner of and entitled to said distributive share, and asked that the decree be altered and amended accordingly.

JAMES L. BAXTER, *for petitioner.*

WM. F. PURDY, *for administrator.*

THE SURROGATE.—It is not usual, to say the least of it, for a person to sell or assign what he does not own.   True, in 2 Thos. Coke, 486 (*note* L.), it is said: " Leases by estoppel are such as are made by persons who have no interest at the time, or at least no vested estate, but are to operate on their ownership, when

they shall acquire the same. Thus, if an heir apparent, or a person having a contingent remainder, or an interest under an executory devise, or who has no title whatever at the time, makes a lease by indenture, or by a *fine sur concessit*, and afterwards an estate vests in him, this indenture or fine will operate by way of estoppel, to entitle the lessee to hold the lands for the term granted to him; and this estoppel, when it becomes efficient, and can operate on the interest, will be fed by the interest; and the lease will be deemed as a lease derived out of an actual ownership."

There, the subject of the lease is fixed and certain, although the heir apparent may never become the heir in fact, by reason of a devise to others, in which case there would be nothing taken under the lease. It is possible that such a rule might be made applicable to a sale made by an apparent next of kin, of an expectant title to the goods of an intestate, but I have never heard of its being done. If it were, it could only operate as an estoppel against the vendor. It is generally understood that, in a sale of chattels, there is an implied warranty of title by the vendor. True, this implication may be repelled by the terms of the sale. The conveyances, in this matter, have not been submitted, nor are their contents stated further than has been recited.

The petitioner virtually claims that her husband, in 1863, sold and assigned to his mother personal property which he did not own, but which then belonged to the mother, who then assigned it to the petitioner. This, if true, was a very remarkable transaction.

Suppose the property to have consisted of the parlor furniture which belonged to the mother, and in which the son might, on her death, have an interest, as one of her next of kin, provided she died intestate and he survived her, what interest had he in it to assign during her life, that did not already belong to her? The mother then assigns the intangible interest so conveyed to her by her son, to the petitioner, still retaining the property. A stranger cannot thus be be substituted for, and transformed into, a next of kin. If the parties really designed to accomplish the alleged transfer, it could only have been effected, as it seems to me, by a will of the owner of the property. If, on the contrary, the alleged transaction operated the transfer, then the petitioner's claim would be, not that of a next of kin, but that of a creditor of the intestate. But she is neither such creditor, next of kin, or assignee of the distributive share of a next of kin, and, hence, has no interest in the estate such as to enable me to recognize her as possessed of any interest sufficient to permit her to make this application.

Having reached the conclusion indicated, upon another ground, it becomes unnecessary to determine whether the facts presented would authorize the opening of the decree.

Application denied.